UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ST. AMANT,

    Plaintiff,

v.                                           CASE NO. 11-cv-10402

NATIONAL RAILROAD PASSENGER     HON. MARIANNE O. BATTANI
CORPORATION, d/b/a AMTRAK,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT
AMTRAK'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Before the Court is Defendant National Railroad Passenger Corporation d/b/a Amtrak's ("Amtrak") Motion for Summary Judgment brought pursuant to Fed. R. Civ. P. 56(a). (Doc. 30). Plaintiff David St. Amant filed this action pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et. seq., after he was injured while working for Defendant. Persuant to Rule 7.1(f)(2) the Court determined that oral arguments would not aid in the resolution of this motion. E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the motion is **DENIED**.

## II. STATEMENT OF FACTS

Defendant booked a group of eighty-four to eighty-seven senior citizens on an Amtrak train traveling from Chicago to Detroit on February 21, 2008. Defendant's trains running out of Chicago continue to have baggage service so the senior citizen group received assistance with luggage at the Chicago station. (Doc. 36 Ex. C p. 32-33). Because Amtrak suspended baggage service in Michigan in 2002, the seniors were

required to carry their own bags when they arrived in Detroit. (Doc. 36 Ex. A p. 209). Because the majority of the seniors were incapable of handling their own baggage, Defendant's employees had to help the senior citizens get their bags off of the train. (Doc. 36 Ex. B p. 29-30). Consequently, the train was delayed fifteen minutes leaving Detroit. (Doc. 36 Ex. A at 101; Doc. 30 Ex. 6). Additionally, the Detroit crew spent another thirty to forty minutes getting the baggage down a slippery ramp to street level. (Doc. 36 Ex. B at 28-31).

One employee, Gerry Brown-Sewell, contacted Plaintiff, the Road Foreman of Engines in charge of Defendant's Pontiac Station, and inquired about sending the senior citizens back to Chicago through the Pontiac Station rather than the Detroit Station. (Id. at 30-31). St. Amant agreed with this plan because, unlike the Detroit Station, the Pontiac Station was on ground level, and presented a safer and faster option for boarding the senior citizens and their luggage on time. (Doc. 36 Ex. A at 106-07).

Thereafter, Plaintiff contacted his superior, Charlie Zak, by email to apprise Zak of the situation. The parties dispute whether St. Amant requested guidance in the email. (See Doc. 36 Ex. C p. 8; Doc. 30 at 27). The email stated that eighty-four senior citizens, who could not handle their own luggage, delayed the train coming into Detroit for nineteen minutes (fifteen minutes longer than the scheduled four) and required an additional hour of assistance to get down the platform. (Doc. 36 Ex. E). St. Amant also claims he telephoned Zak and two other superiors and reached both Zak and John Snowden. (Doc. 36 Ex. A at 220-23). Plaintiff could not recall whether he specifically asked Zak for more manpower or for a baggage float (a tractor on the back of a cart

2

used to carry bags which reduces the lifting height by 50% when loading baggage). (Id. at 220-21). However, St. Amant maintains that he made Amtrak aware that he did not have enough manpower to complete the job. (Doc. 36 Ex. C at 9-10). During their phone call, St. Amant claims Zak instructed him to "make it happen," (Doc. 36 Ex. A at 222-23), which Plaintiff took to mean board the group through any means necessary. Zak testified that he does not remember seeing Plaintiff's email or speaking to him about the senior group. (Doc. 30 Ex. 5 at 43-45).

St. Amant called the group's leader and scheduled the group to come to Pontiac early so it could board on time. (Doc. 36 Ex. A at 107). Plaintiff also decided that the group's luggage would be placed on a converted Non-Powered Control Unit ("NPCU"), a train car that had been used to control the train until 1998, when it was converted into a baggage car. (Doc. 36 Ex. A at 208-10).

The group arrived by bus at the Pontiac station, and St. Amant, Assistant Conductor ("AC") Walhiem Woods, and three non-Amtrak employees started loading the baggage onto the train. (Doc. 36 Ex. A at 114). The non-Amtrak employees carried the group's baggage from the bottom of the bus approximately thirty feet to the NPCU, then lifted the baggage to chest height. (Id. at 117). Plaintiff and Woods, who were standing inside the NPCU, bent down and lifted the bags the rest of the way into the car. (Id. at 116-18). St. Amant estimates that he personally lifted sixty to eighty pieces of luggage. (Id. at 43).

Plaintiff made two statements regarding how the injury occurred: that he hurt his back while he "'was putting bags inside the car, arranging them. . .moving them closer together so [he] could stack them.'" (Id. at 213), and that "'in the process of putting a

3

bag up on top of another bag [he] felt something in [his] back.'" (Id. at 136). St. Amant also gave contradictory explanations for his back injury to the multitude of doctors he visited. Plaintiff told some doctors that he hurt his back lifting heavy baggage or a heavy bag, but provided differing dates. (Doc. 30 Ex. 2 at 193-95; Doc. 30 Ex. 13 at 52-54; Doc. 30 Ex. 15). St. Amant told other doctors that the back pain was not caused by any accident or injury and occurred gradually over time. (Doc. 30 Ex. 2 at 202; Doc. 30 Ex. 16). St. Amant estimates that an additional two ACs or the use of a baggage float would have prevented the injury. (Doc. 36 Ex. A at 218-19; Doc. 36 Ex. A at 226-27).

St. Amant did not submit a written injury report to Zak as required by Amtrak's injury policy. (Doc. 30 Ex. 2 at 123-24). Although Plaintiff did verbally apprise Zak of his injury, (Doc. 36 Ex. C at 12-13), Zak does not remember Plaintiff complaining of a back injury after the February 24 incident. (Doc. 30 Ex. 5 at 45-46). According to St. Amant, supervisors told him many times that managers, such as himself, were not to get hurt. (Id. at 125-27). Plaintiff stated that the unwritten rule kept him from filing an injury report. (Id.). Amtrak disputes the existence of any such rule. (Doc. 30 at 12). St. Amant stopped working after the incident and has not worked at all since that date.

### III. STANDARD OF REVIEW

Summary Judgment is appropriate only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The central inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of

an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court must lend credence to the non-moving party's interpretation of the disputed facts. Martin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine issue for trial. See Fed. R. Civ. P. 56(c)(1). There must be evidence on which the jury could reasonably find for the non-moving party. Hopson v. Daimler Chrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

**IV. ANALYSIS**

St. Amant filed suit under FELA alleging that Amtrak caused his injury by negligently failing to provide adequate safety equipment or adequate manpower to safely load the senior group and luggage onto the train. Defendant moves for summary judgment two grounds:  Plaintiff cannot prove Defendant's alleged negligence caused the injury; and/or Defendant did not have notice of the risk as required under FELA. The Court discusses each issue below.

### A. Causation

The parties dispute whether St. Amant can establish that Amtrak's alleged negligence caused his injury. Under FELA, railroad companies are liable in damages to any employee who suffers injury due to the railroad's negligence. 45 U.S.C. § 51. Congress enacted FELA to provide a broad remedial framework for railroad workers, and courts construe the Act liberally in their favor. Atchison, Topeka & Santa Fe Ry., Co. v. Buell, 480 U.S. 577, 562 (1987). Consequently, in a FELA action, a plaintiff's burden of proof is less demanding than in an ordinary negligence case because the railroad is liable when "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest in producing the injury." Lisek v. Norfolk and Western R. Co., 30 F.3d 823, 832 (7th Cir. 1994) (quotations omitted). Summary judgment should be granted when a plaintiff provides no evidence whatsoever to support the inference of negligence. Id.

To establish a FELA claim, a plaintiff must show the following: "(1) an injury occurred while the plaintiff was working within the scope of his employment with the railroad; (2) the employment was in the furtherance of the railroad's interstate transportation business; (3) the employer railroad was negligent; and (4) the employer's negligence played some party in causing the injury for which compensation is sought under the Act." Aparicio v. Norfolk & Western Railway Co., 84 F.3d 803, 810 (6th Cir. 1996), abrogated on other grounds, Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000). In accordance with the common law, negligence requires proof of duty, breach of duty, foreseeability and causation. Id. (quoting Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990). A railroad owes a duty to use ordinary care to

6

protect its employees. Aparicio, 84 F.3d at 811. That duty is breached if the railroad fails to provide a safe working environment when it knew or should have known that it was not acting adequately to protect its employees. Id. If the railroad might reasonably have foreseen that any injury might occur, then the foreseeability requirement has been met. Id. at 814.

First, the parties dispute whether the alleged lack of adequate equipment caused St Amant's injury. Plaintiff claims that additional safety equipment, like a baggage float, would have prevented his injury because it would have cut the lifting distance in half. The Court's inference is not undermined by Amtrak's argument that St. Amant injured his back while moving the baggage around inside the car, for which a baggage float would not have been useful. The facts are undisputed that in order to put bags inside the car, Plaintiff had to reach down and take the bags from the assistants below and lift them into the car. It is a reasonable inference to conclude that a shortened lifting height could have prevented the injury from occurring.

Second, the parties dispute whether the alleged lack of adequate manpower caused St. Amant's injury. Plaintiff contends that two additional ACs would have allowed him to perform his job safely. Amtrak construes that statement in the light least favorable to St. Amant by arguing that because he had four assistants, two more than St. Amant claimed were required, the alleged lack of manpower could not have caused the injury.

The Court rejects Defendant's argument. St. Amant did not specify how he would have used the two additional ACs. A reasonable juror could infer that Plaintiff meant two ACs in addition to the three assistants on the ground and one in the NPCU

7

with him. There is evidence to support this interpretation because Plaintiff claimed that had there been more ACs helping him, he would not have been lifting bags at all as it generally was not a part of his job. (Doc. 30 Ex. C at 210). Further, Plaintiff claimed that he personally lifted sixty to eighty pieces of luggage. If St. Amant had two more ACs, his workload would have been drastically reduced, lessening the strain on his back. A reasonable juror could conclude that more manpower would have prevented Plaintiff's injury.

St. Amant's sworn deposition testimony presents sufficient evidence to demonstrate the existence of genuine dispute of material fact on which reasonable minds could differ. Consequently, Amtrak is not entitled to summary judgment on this ground.

### B. Notice

The parties dispute whether FELA requires Plaintiff to prove that the risk of injury was foreseeable or prove that Defendant had notice of the risk and whether Plaintiff actually can prove foreseeability or notice. First, to prove a FELA negligence claim, the plaintiff must prove that its injury was foreseeable. Gallick v. Baltimore & O. R. Co., 372 U.S. 108, 117 (1963). The fact that there have not been any similar incidents in the past does not prevent the injury from being foreseeable. Id. at 121-22. A plaintiff does not need to prove that a defendant had actual notice of the dangerous condition. Nivens v. St. Louis Southwestern Ry. Co., 425 F.2d 114, 118 (5th Cir. 1970). See also Shenker v. Baltimore & Ohio R. Co., 374 U.S. 1, 7-8 (1963) (upholding a jury instruction requiring foreseeability for a negligence claim and rejecting as irrelevant defendant's claim that the claim requires actual notice of the unsafe condition). Although some

lower courts have held that actual notice is required in some cases, (see Kaminski v. Chicago River and Indiana R. C., 200 F.2d 1 (7th Cir. 1952) and Miller v. Cincinnati, N.O. & T.P. Ry. Co., 317 F2d 693 (6th Cir. 1963)), the Supreme Court in Shenker expressly rejected Kaminski's relevance and upheld a jury instruction on foreseeability. Shenker, 374 U.S. at 7-8. Additionally, the Court upheld the foreseeability standard in its recent 2011 decision, CSX Transportation v. McBride, 131 S. Ct. 2630, 2638 (2011), demonstrating that foreseeability is still the applicable standard for FELA negligence cases.

      Second, the parties dispute whether the risk of injury to Plaintiff was foreseeable. St. Amant testified that he made Amtrak aware of the situation through email with multiple superiors and phone conversations with both Zak and Snowden. During these conversations, Plaintiff explained the situation to his superiors and sought guidance. Zak told Plaintiff to "make it happen." St. Amant's testimony creates a reasonable inference that Amtrak knew that there were eighty-four passengers coming into the Pontiac station who would need baggage assistance. According to Plaintiff, Defendant also was aware of the manpower shortage in Pontiac. Viewed in the light most favorable to Plaintiff, these facts demonstrate that it was reasonably foreseeable that St. Amant might be required to help carry the baggage onto the train, and that a back injury could occur while lifting a large number of bags onto a raised train platform. Because written documentation is not, as Amtrak implies, the only type of evidence admissible to support a claim, Plaintiff's sworn deposition testimony provides sufficient evidence to create a question of fact on the foreseeability of the risk.

Additionally, an internal memorandum from 1998 outlines Amtrak's decision to provide baggage floats when baggage was loaded onto NPCUs. (Doc. 36 Ex. D). A reasonable juror could conclude from this internal memo that, because Defendant decided it needed to minimize the lifting height in loading NPCUs, Defendant was aware of the risk associated with lifting baggage onto NPCUs without the aid of the baggage floats. The absence of a substantial number of injuries stemming from loading NPCUs does not, as Amtrak claims, prevent an injury from being foreseeable. See Gallick, 372 U.S. at 121-22 (holding that the absence of "similar incidents" does not prevent the risk from being foreseeable).

In sum, the existence of a genuine dispute of material fact regarding whether Plaintiff's injury was foreseeable is created by Plaintiff's testimony and Defendant's internal memorandum. A reasonable juror could conclude that the injury was foreseeable.

**V. CONCLUSION**

For the reasons discussed above, the Court **DENIES** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                                    s/Marianne O. Battani
                                                    MARIANNE O. BATTANI
                                                    UNITED STATES DISTRICT JUDGE

DATE: August 3, 2012